UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE GRANT,

    Plaintiff,

v.

ROLAND FREDERICK,
KENNETH VALRIE, and
KEVIN TREASVANT,

    Defendants.

Case No. 18-13672

Honorable Nancy G. Edmunds

_____/

**OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [19]**

This civil rights lawsuit brought pursuant to 42 U.S.C. § 1983 arises out of Plaintiff Bruce Grant's arrest on April 20, 2016. Plaintiff alleges that Defendant Officers Roland Frederick, Kenneth Valrie, and Kevin Treasvant (collectively referred to as "Defendants") violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution when they conducted an unlawful search and seizure of his person. The matter is now before the Court on Defendants' motion for summary judgment. (Dkt. 19.) Defendants argue that they are entitled to qualified immunity, and that they conducted a lawful investigatory stop. Plaintiff filed a response opposing the motion, (dkt. 21), and Defendants filed a reply, (dkt. 22). The Court held a hearing on the motion on October 30, 2019. For the reasons set forth below, the Court DENIES Defendants' motion.

**I.    Background**

On April 20, 2016, Defendants were on patrol in a marked scout car as a part of the Detroit Police Department's gang intelligence unit. Plaintiff was walking northbound

1

on Rutland Street in Detroit, and Defendants were heading westbound on Elmira toward Rutland.  According to Plaintiff, when he reached the stop sign, he looked up from his phone and saw a white van followed by a police vehicle and another vehicle.  (Dkt. 21-2, PgID 160-61.)  He turned left onto Elmira and continued his walk towards the gas station on Southfield and Plymouth, but was cut off by a City of Detroit scout car.  (*Id.*)  A second police car also stopped.  Defendant Officer Frederick exited the car and conducted a pat down of Plaintiff.  A gun was found in Plaintiff's right waistband.  Because Plaintiff did not have a concealed pistol license, he was placed under arrest and later charged in state court with carrying a concealed weapon.

Plaintiff filed a motion to suppress the evidence in the state court case and argued that the stop was unlawful.  Defendant Frederick testified at the motion to suppress hearing that Plaintiff was initially walking normally but when he saw the officers, he stopped, grabbed his right waistband, and then continued a couple of steps before turning and walking away at a faster pace than he was walking previously.  (Dkt. 21-3, PgID 185-86.)  Defendant Frederick then discussed his observations with Defendants Valrie and Treasvant and they agreed that Plaintiff's behavior was consistent with that of an individual attempting to conceal a gun.  The state court reasoned that Plaintiff turning around, dropping his arm, and walking in a different direction did not constitute reasonable suspicion, and, thus, granted the motion to suppress.  (Dkt. 21-9, PgID 255.)  The charge against Plaintiff was therefore dismissed. (*Id.* at PgID 256.)

## II. Legal Standard

It is well established that summary judgment under Federal Rule of Civil Procedure 56 is proper when "'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)). When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *Id.* at 327 (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III. Analysis

Defendants argue that they are entitled to qualified immunity because they did not violate Plaintiff's right to be free from unreasonable search and seizure pursuant to the Fourth Amendment.[1] Plaintiff responds by arguing that taking the facts in the light most favorable to him, there was a Fourth Amendment violation.

---

[1] While Plaintiff's complaint also alleges that his race was a motivating factor in the decision to stop and seize him in violation of the Fourteenth Amendment,

3

## A. Qualified Immunity Generally

Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A government official "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that [the action at issue was lawful]; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Qualified immunity is an initial threshold question the court is required to rule on early in the proceeding so that the costs and expenses of trial are avoided where the defense is dispositive.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.*

The first inquiry to determine qualified immunity is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right.  *Siegert v. Giley*, 500 U.S. 226, 232 (1991).  If no constitutional right would have been violated, there is no need for further inquiries concerning qualified immunity.  *Saucier*, 533 U.S. at 201.  If a violation could be made out, the next step is to determine whether the right was clearly established in light of the

---

Defendants do not move for summary judgment on this claim.  Accordingly, the Court does not address this issue.

4

specific context of the case, not as a broad general proposition. *Id.* The "clearly established" right allegedly violated by the officials cannot be considered at an abstract level, but must be approached at a level of specificity: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "Reasonableness" is a question of law to be decided by the trial court.

### B. Fourth Amendment Claim

Defendants argue that they did not violate the Fourth Amendment because they conducted a lawful *Terry* investigatory stop. Plaintiff argues that Defendants did not have the requisite reasonable suspicion to conduct such a stop.

Under what is known as a *Terry* stop, the police may "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."[2] *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Even though "'reasonable suspicion' is a less demanding standard than probable cause," it requires "more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity." *Id.* at 123-24 (quoting *Terry*, 392 U.S. at 27). In *Wardlow*, the Supreme Court held that unprovoked flight upon noticing the police in an area of heavy narcotics trafficking was sufficient to establish reasonable suspicion. *Id.* at 124-25. The court reasoned that this holding was consistent with *Florida v. Royer*, 460 U.S. 491, 498 (1983), a case in which it had previously held that an "individual has a right to ignore the police and go about his business" when approached by an officer,

---

[2] Defendants assert that the Court need not consider the reasonableness of the detention because it was merely a *Terry* stop, but this is an incorrect characterization of the law. *See United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005).

5

because "unprovoked flight is simply not a mere refusal to cooperate." *See Wardlow*, 528 U.S. at 125.

Here, Defendants attempt to draw an analogy between this case and *Wardlow* and argue that Plaintiff turning and hurrying away from police officers in a high crime area was sufficient to constitute reasonable suspicion. However, unlike in *Wardlow*, Plaintiff did not run or flee. Moreover, Plaintiff testified that he was walking towards the store and simply continued on his way when he saw the police. *See United States v. Caruthers*, 458 F.3d 459, 466 (6th Cir. 2006) ("simply walking away from the police does not give rise to reasonable suspicion"). And while the fact that the stop took place in a high crime area may be considered in a *Terry* analysis, it is insufficient, on its own, to give rise to reasonable suspicion. *See id.* at 467. Thus, taking the evidence in the light most favorable to Plaintiff, as the Court must do on a motion for summary judgment, a jury could conclude that Defendants violated the Fourth Amendment because they did not have reasonable suspicion that criminal activity may be afoot when they stopped Plaintiff.

Because *Terry*, which requires reasonable suspicion for investigative detentions, was decided by the Supreme Court in 1968, and *Royer*, which held that an individual may ignore the police and go about his business even when approached by an officer, was decided by the Supreme Court in 1983, the Court finds that the rights at issue here were clearly established at the time of the incident. *See Feathers v. Aey*, 319 F.3d 843, 850 (6th Cir. 2003). Therefore, Defendants are not entitled to qualified immunity and Plaintiff's claim pursuant to the Fourth Amendment survives summary judgment.

6

## IV. Conclusion

For the reasons set forth above, the Court DENIES Defendants' motion for summary judgment.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: November 1, 2019


I hereby certify that a copy of the foregoing document was served upon counsel of record on November 1, 2019, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager